**In re KRYSTAL S.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 29, 1990.

Decided Jan. 8, 1991.

Arthur J. Keenan, Packard & Keenan, Newport, for plaintiff.

Martha S. Temple, Peggy B. Gilbert, Gilbert & Heitmann, Bangor, for defendant.

Margaret T. Campbell, Cutty & Lanham, Bangor, guardian ad litem.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
CLIFFORD and BRODY, JJ.

CLIFFORD, Justice.

In this proceeding brought pursuant to 18–A M.R.S.A. § 5–207 (1981), Edith S., the former foster parent of Kathy A., sought appointment as guardian of Krystal S., Kathy's minor child. The Penobscot County Probate Court (*Patterson, J.*) found pursuant to 18–A M.R.S.A. § 5–204 (1981) that there was insufficient proof that Kathy's parental rights of custody had been terminated or suspended by circumstances. Despite that finding, the court did not dismiss Edith's petition. Rather, pursuant to 18–A M.R.S.A. § 5–207(b), the court appointed Kathy as guardian of Krystal, subject to visitation rights in Edith. Because we conclude that the Probate Court acted beyond its statutory authority in issuing its order in this case, we vacate the judgment and remand for a dismissal of the petition.

At the time Kathy gave birth to Krystal in August of 1985, Kathy was living as a foster child in Edith's home.[1] The relationship between Kathy and Edith gradually deteriorated following Krystal's birth, and in April 1987, Kathy left Krystal with Edith and moved to another foster home. In August of 1988, Edith petitioned the Probate Court to be appointed as guardian of Krystal pursuant to 18–A M.R.S.A. § 5–207. Edith subsequently was appointed temporary guardian pursuant to 18–A M.R.S.A. § 5–207(c).[2] The temporary order provided for Kathy to visit with Krystal.

At the hearing on her petition for permanent guardianship, Edith sought to prove that Kathy's parental rights of custody had been suspended by circumstances. *See* 18–A M.R.S.A. § 5–204.[3] The court found that Edith had failed to prove such a suspension of parental rights, but declined to dismiss Edith's petition. Instead, the court, acting pursuant to the "other disposition" language of 18–A M.R.S.A. § 5–207(b),[4] appointed Kathy as guardian of Krystal with the provisions that Kathy encourage a loving relationship between Edith and Krystal and that Edith have visitation rights to Krystal. From that order, Kathy appeals and Edith cross-appeals.

*Cross-appeal*

■ In her cross-appeal, Edith contends that the court erred in finding that she failed to prove that Kathy's parental rights of custody had been "terminated or suspended by circumstances or prior court order." 18–A M.R.S.A. § 5–204. We will uphold the factual findings of the Probate Court unless those findings are clearly erroneous. *Estate of Fisher*, 545 A.2d 1266, 1270 (Me.1988). Because Edith had the burden of proof, she must demonstrate on appeal that the evidence before the Probate Court compelled the court to find that Kathy's parental rights of custody had been terminated or suspended. *See Luce v. Hoefler*, 464 A.2d 213, 215 (Me.1983).

■ Kathy's parental rights had not been terminated pursuant to 22 M.R.S.A.

1. The natural father of Krystal S. has not asserted any rights to the custody of the child or participated in the guardianship proceedings, and is not a party to this appeal.

2. 18–A M.R.S.A. § 5–207(c) provides:
   (c) If necessary, the court may appoint a temporary guardian, with the status of an ordinary guardian of a minor, but the authority of a temporary guardian shall not last longer than six months.

3. 18–A M.R.S.A. § 5–204 provides in pertinent part:
   The court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order.

4. 18–A M.R.S.A. § 5–207(b) provides:
   (b) Upon hearing, if the court finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of section 5–204 have been met, and the welfare and best interests of the minor will be served by the requested appointment, it shall make the appointment. In other cases the court may dismiss the proceedings, or make any other disposition of the matter that will best serve the interest of the minor.
   Because we conclude that the court had no authority in this case to make the "other disposition" it purported to make, we remand for entry of judgment dismissing the petition pursuant to this section.

§§ 4050–4058 (Supp.1990), nor suspended by a court order.[5] Therefore, the issue before the court was whether Kathy's parental rights had been suspended by circumstances. The court construed section 5–204 to require a finding that Kathy either abandoned the child or is unfit to care for the child before the court could conclude that her parental rights of custody had been suspended by circumstances, and Edith does not question that interpretation of the controlling statute.

Kathy did leave Krystal with Edith when she moved out of Edith's home, but the move was precipitated by tension between Edith and Kathy caused in part by Kathy's insecurity about her ability to care for Krystal and continue her education. Kathy left a note asking that she be allowed to return if she was unable to be away from Krystal. After moving out, Kathy maintained contact with Krystal while she completed her education, married and bore a son. The record does not compel a finding that Kathy intended to abandon Krystal,[6] or that she was unfit to care for the child at the time of the hearing. We reject Edith's contention that Kathy's failure to fulfill her parental responsibilities and to care for her child for a period of time after the child's birth resulted in her parental rights being forever suspended. Based on the evidence before it, the court was not compelled to find that Kathy's parental rights were suspended by circumstances.[7]

### Appeal

■ Despite its finding that Edith failed in her burden to prove that Kathy's parental rights of custody had been suspended by circumstances, the Probate Court, acting pursuant to section 5–207(b), issued an order appointing Kathy, the child's mother, as guardian, and granting specific visitations rights to Edith. We agree with Kathy's contentions on appeal that in doing so, the court went beyond its statutory authority. The powers of the Probate Court are created by statute, and the court's actions are null and void unless taken pursuant to statutory authority. *Legault v. Levesque*, 150 Me. 192, 193–94, 107 A.2d 493, 495 (1954). Only courts having full equity jurisdiction possess *parens patriae* powers to adjudicate rights to the custody of infants. *Roussel v. State*, 274 A.2d 909, 917–18 (Me.1971). The Probate Court has equity jurisdiction in all matters relating to wills, trusts, and administration of decedents' estates. 4 M.R.S.A. § 252 (1989);[8] *see In re Estate of Neely*, 136 Me. 79, 82, 1 A.2d 772, 774 (1938). No such general equity jurisdiction exists in the Probate Court to adjudicate rights to the custody of minors. Absent statutory authority, under these circumstances, the Probate Court is without power to appoint a guardian and to grant rights of contact with a minor to a third party. *See In re Thaxter*, 154 Me. 288, 291, 147 A.2d 126, 128 (1958).

A minor's parents are its natural guardians and the law commits the care and custody of the child to them. *Shaw v. Small*, 124 Me. 36, 38, 125 A. 496, 498 (1924); 19 M.R.S.A. § 211 (1981).[9] The

5. Edith cannot rely upon her appointment as temporary guardian pursuant to 18–A M.R.S.A. § 5–207(c), which could not exceed six months, to constitute a suspension of parental rights by court order within the meaning of section 5–204.

6. For a statutory definition of abandonment, *see* 22 M.R.S.A. § 4002(1–A) (Supp.1990).

7. In addition, Edith contends that the Probate Court should have awarded custody to her as Krystal's "psychological mother." *See Hoy v. Willis*, 165 N.J.Super. 265, 398 A.2d 109, 112 (1978). Because we conclude that the Probate Court had no authority in this case to interfere with Kathy's right as her natural mother to custody of Krystal, we reject Edith's contention.

8. 4 M.R.S.A. § 252 (1989) provides:

   The courts of probate shall have jurisdiction in equity, concurrent with the Superior Court, of all cases and matters relating to the administration of the estates of deceased persons, to wills and to trusts which are created by will or other written instrument. Such jurisdiction may be exercised upon complaint according to the usual course of proceedings in civil actions in which equitable relief is sought.

9. 19 M.R.S.A. § 211 provides:

   The father and mother are the joint natural guardians of their minor children and are jointly entitled to the care, custody, control, services and earnings of such children. Neither parent has any rights paramount to the

care and custody of a child can be taken from a parent if, for example, the child is in jeopardy, *see* 22 M.R.S.A. §§ 4031–4039 (Supp.1990), the parents are separating or divorcing, 19 M.R.S.A. § 752 (Supp.1990), or parental rights are terminated or suspended, 18–A M.R.S.A. § 5–204. *See Legault,* 150 Me. at 193–94, 107 A.2d at 495.

18–A M.R.S.A. § 5–204 grants the Probate Court the authority to appoint a guardian of an unmarried minor child *only* if "all parental rights of custody have been terminated or suspended by circumstances or prior court order." The court found that Kathy's parental rights have not been terminated or suspended by circumstances or court order, and therefore the court had no power pursuant to section 5–204 to appoint a guardian. Moreover, as the mother of Krystal, Kathy is her natural guardian and is responsible for her care and custody. *Legault,* 150 Me. at 193, 107 A.2d at 495.

█ In issuing its order naming Kathy as guardian of Krystal and granting rights of visitation to Edith, the Probate Court relied on the language in 18–A M.R.S.A. § 5–207(b). That section provides that if all the factors listed in that section are not present, and the court does not make an appointment of a guardian for the minor pursuant to section 5–204, then the court, if it does not dismiss the petition, may "make any other disposition of the matter that will best serve the interest of the minor." 18–A M.R.S.A. § 5–207(b). Contrary to Edith's contentions, that provision does not give blanket authority to the Probate Court to override the custodial rights of parents fit to care for their children. Rather, it allows the court to act in the best interest of the minor in the event that the appointment of the petitioner as guardian cannot or should not be made for any number of reasons. For example, notices may have been deficient, the person seeking appointment as guardian may not be qualified, or the best interest of the minor would not be served by that appointment. *See* 18–A M.R.S.A. § 5–207(b). In such cases, the

court could appoint or reappoint a temporary guardian, *see* section 5–207(c), or appoint as guardian someone other than the petitioner.

In this case, however, the only issue determined by the court was that Kathy's parental rights had not been suspended by circumstances. In the absence of general equity jurisdiction, *see Roussel,* 274 A.2d at 917–18, or statutory authority to award reasonable rights of contact with a minor child to any third person, *see* 19 M.R.S.A. § 752 (Supp.1990),[10] the Probate Court had no power to award rights of visitation to Edith, or to impose upon Kathy the obligation to foster a relationship between her child and Edith.

The entry is:

Judgment vacated. Remanded to the Probate Court for entry of dismissal of petition.

All concurring.

---

rights of the other with reference to any matter affecting such children.

**10.** 19 M.R.S.A. § 752(6) allows a court in a divorce action to "award reasonable rights of contact with a minor child to any 3rd persons."